IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-71098-lrc |
| WILLETTE KIMBERLY SLOCUM DBA V3 HOLDINGS LLC, | CHAPTER: 13 |
| Debtor. | JUDGE: LISA RITCHEY CRAIG |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSMPS MORTGAGE LOAN TRUST 2004-4, | CONTESTED MATTER |
| Movant, | |
| v. | |
| WILLETTE KIMBERLY SLOCUM DBA V3 HOLDINGS LLC, Debtor MELISSA J. DAVEY, Trustee, | |
| Respondent(s). | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that the Movant named above has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an Order Granting Relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in Courtroom 1204, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303, at 1:15 P.M., on January 30, 2018.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk,

U.S. Bankruptcy Court, 75 Ted Turner Drive SW, Room 1340, Atlanta, GA 30303. You must also mail a copy of your response to the undersigned at the address stated below.

     If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-71098-lrc |
| WILLETTE KIMBERLY SLOCUM FDBA 3V REALTY LLC DBA V3 HOLDINGS LLC, | CHAPTER: 13 |
| Debtor. | JUDGE: LISA RITCHEY CRAIG |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSMPS MORTGAGE LOAN TRUST 2004-4, | CONTESTED MATTER |
| Movant, | |
| v. | |
| WILLETTE KIMBERLY SLOCUM FDBA 3V REALTY LLC DBA V3 HOLDINGS LLC, Debtor MELISSA J. DAVEY, Trustee, | |
| Respondent(s). | |

MOTION FOR ORDER UNDER § 362(c)(4)(A)(ii)
CONFIRMING NO AUTOMATIC STAY IS IN EFFECT

COMES NOW Movant named above and shows this Court the following:

1.      Movant files this Motion under 11 U.S.C. § 362(c)(4)(A)(ii), for an order confirming that no automatic stay is in effect, showing the Court as follows:

2.      Movant is the holder or the servicer of a loan secured by certain real property in which the Debtor has an interest. Said real property is security for a Promissory Note, and is commonly known as 699 Watson Reef, Stone Mountain, Georgia 30087 (the "Real Property").

3.      This Chapter 13 Case was filed on December 5, 2017, and Debtor is an individual.

4.      The Debtor is not a party to the Note or Security Deed.

5.      The Debtor appears to have acquired her interest in the Real Property, subject to Movant's Security Deed, by a Quitclaim Deed dated April 24, 2000.

6.      On December 5, 2017, Movant conducted a foreclosure sale and the Real Property and a third party was the successful bidder.

7.      During the one-year period preceding the filing of this case, two cases filed by the Debtor were pending and were dismissed. Debtor was a debtor in a prior Chapter 13 case, number 16-65532-lrc, which was dismissed on March 9, 2017 and closed on May 30, 2017. Debtor was a debtor in another Chapter 13 case, number 17-59982-lrc, which was dismissed on September 18, 2017 and closed on December 12, 2017.  Neither of the prior cases was a Chapter 7 case dismissed pursuant to 11 U.S.C. §707(b).

8.      No order has been issued under 11 U.S.C. § 362(c)(4)(B) imposing the stay.

9.      Pursuant to 11 U.S.C. §362(c)(4)(A)(i), because this case was file by a debtor who is an individual, and two (2) cases of the debtor were pending within the previous year but were dismissed, the stay under 11 U.S.C. §362(a) did not go into effect upon the filing of this case.

10.      No party of interest has requested the Court to order the stay to take effect in the case under 11 U.S.C. § 362(c)(4)(B) imposing the stay.

11.      Pursuant to 11 U.S.C. §362(c)(4)(A)(ii), Movant requests that this Court enter an order confirming that no stay is in effect.

WHEREFORE, Movant respectfully requests that the Court enter an Order confirming

that the automatic stay is not in effect.

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com

State of    GEORGIA

# ADJUSTABLE RATE NOTE

June 16, , 19 94

699 WATSON REEF, STONE MOUNTAIN, GA. 30087
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the time of this Note, and the person's successors and assigns. "Lender" means

EMORY MORTGAGE CORP.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
NINETY EIGHT THOUSAND THREE HUNDRED 00/100.
Dollars (U.S. $ 98,300.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at a rate of
SEVEN
percent ( 7.00     %) per year. The interest rate may change in accordance with Paragraph 5(C) of this Note.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on AUGUST 1,1994          . Any principal and interest remaining on the first day of    JULY 1, 2024
, will be due on that date, which is called the maturity date.

### (B) Place

Payment shall be made at
2060 EAST EXCHANGE PLACE SUITE 210, TUCKER GA. 30084

or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Initially, each monthly payment of principal and interest will be in the amount of $ 653.99
This amount will be part of a larger monthly payment required by the Security Instrument that shall be applied to principal, interest and other items in the order described in the Security Instrument. This amount may change in accordance with Paragraph 5(E) of this Note.

## 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Date

The interest rate may change on the first day of    OCTOBER 1,1995          , and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

### (B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in Paragraph 7(B)). Lender will give Borrower notice of the new Index.

### (C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of    TWO AND 00/100S
percentage points ( 2.00     %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

The interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

### (E) Calculation of Payment Change

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making this calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

(F)  **Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date. (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

(G)  **Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

**6.  BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.

**7.  BORROWER'S FAILURE TO PAY**

(A)  **Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of

FOUR

percent (    4.00    %) of the overdue amount of each payment.

(B)  **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**8.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_Hiram Colon_ _____ (Seal)
HIRAM COLON                          Borrower

_____ (Seal)
                                     Borrower

WITHOUT RECOURSE, PAY TO THE ORDER OF
TRUSTCORP MORTGAGE COMPANY
THIS 16 DAY OF    JUNE, 1994
OBY MORTGAGE CORP.

_Paula Williams_
PAULA WILLIAMS, PRESIDENT

_____ (Seal)
                                     Borrower

PAY TO THE ORDER OF
CHARLES F. CURRY COMPANY
WITHOUT RECOURSE
TRUSTCORP MORTGAGE COMPANY
                                     Borrower

PAY TO THE ORDER OF
HOMESIDE LENDING, INC.
WITHOUT RECOURSE
CHARLES F. CURRY COMPANY
By: _____
Peter Cipolla, Executive Vice President
(page 2 of 2 pages)

_Marilyn Botka_
MARILYN J. BOTKA
ASSISTANT VICE PRESIDENT
(TITLE)

**ALLONGE**

**POOL**

**LOAN**

BORROWER NAME **HIRAH COLON**

PROPERTY ADDRESS **699 WATSON REEF, STONE MOUNTAIN GA 30087**

PAY TO THE ORDER OF

WITHOUT RECOURSE
HOMESIDE LENDING, INC.

MARSHALL
VICE PRESIDENT



| LOAN #1: | | SEQ#: | GEORGIA |
| MERS ID# | | | |

## ALLONGE

This Allonge is attached to and made a part of that certain Note or Bond, or Lost Note Affidavit in lieu of that certain Note or Bond,

| Dated: | 6/16/94 |
| Made By: | HIRAM COLON, Mortgagors/Trustors |
| To: | EMORY MORTGAGE CORP., Mortgagee/Beneficiary |
| In the Amount of : | $98,300.00 |
| Property Address : | 699 WATSON REEF, STONE MOUNTAIN, GA 30087 |

Pay to the order of

without recourse.

Washington Mutual Bank, FA,      successor in interest to
Homeside Lending, Inc

BY: _____

C. Felner
Its: Authorized Representative

FILED & RECORDED
DEKALB CO. GA.

SEP 12 1994

JUN 28  8 30 AM '94

CLERK OF SUPERIOR COURT
DEKALB COUNTY, GA.

Blackburn & Walther, P.C.
3625 Savannah Place
Suite 102
Duluth, Georgia 30136

# FHA SECURITY DEED

## STATE OF GEORGIA

FHA CASE NO.

___ THIS SECURITY DEED ("Security Instrument") is given on    JUNE 16, 1994
The grantor is

HIRAM COLON                                                    ("Borrower").

This Security Instrument is given to

EMORY MORTGAGE CORP.

which is organized and existing under the laws of    THE STATE OF GEORGIA
and whose address is    2060 EAST EXCHANGE PLACE, SUITE 210, TUCKER, GA   30084

                                                          ("Lender"). Borrower owes Lender the principal sum of
NINETY EIGHT THOUSAND THREE HUNDRED AND 00/100S-----------------------------------

Dollars (U.S. $    ****98,300.00****    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    JULY 1, 2024
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security
of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and
the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power
of sale, the following described property located in

                                                          DEKALB        County, Georgia:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 192, 16TH
DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 42, BLOCK A, FOREST COVE AT
WATER'S EDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 86, PAGE 122,
DEKALB COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY THIS
REFERENCE.

GEORGIA INTANGIBLE TAX
TOM SCOTT, Tax Commissioner
DEKALB COUNTY, GA.

which has the address of    699 WATSON REEF, STONE MOUNTAIN,
                                   [Street]                                   [City]
Georgia            30087                    ("Property Address");
                [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, Forever, Together with
all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties,
mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All
replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security
Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant
and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants
and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, an installment of any (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by Paragraph 4.

Each monthly installment for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full annual amount for each item shall be accumulated by Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust to pay items (a), (b) and (c) before they become delinquent.

If at any time the total of the payments held by Lender for items (a), (b) and (c), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall either refund the excess over one-sixth of the estimated payments or credit the excess over one-sixth of the estimated payments to subsequent payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for item (a), (b), or (c) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. In any year in which the Lender must pay a mortgage insurance premium to the Secretary, each monthly payment shall also include either: (i) an installment of the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary. Each monthly installment of the mortgage insurance premium shall be in an amount sufficient to accumulate the full annual mortgage insurance premium with Lender one month prior to the date the full annual mortgage insurance premium is due to the Secretary; or if this Security Instrument is held by the Secretary, each monthly charge shall be in an amount equal to one-twelfth of one-half percent of the outstanding principal balance due on the Note.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note;

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, an installment of any (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by Paragraph 4.

Each monthly installment for items (a), (b) and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full annual amount for each item shall be accumulated by Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust to pay items (a), (b) and (c) before they become delinquent.

If at any time the total of the payments held by Lender for items (a), (b) and (c), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall either refund the excess over one-sixth of the estimated payments or credit the excess over one-sixth of the estimated payments to subsequent payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for item (a), (b), or (c) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. In any year in which the Lender must pay a mortgage insurance premium to the Secretary, each monthly payment shall also include either: (i) an installment of the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary. Each monthly installment of the mortgage insurance premium shall be in an amount sufficient to accumulate the full annual mortgage insurance premium with Lender one month prior to the date the full annual mortgage insurance premium is due to the Secretary; or if this Security Instrument is held by the Secretary, each monthly charge shall be in an amount equal to one-twelfth of one-half percent of the outstanding principal balance due on the Note.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a), (b) and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b) and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note;

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lenders of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly

  *(page 2 of 4 pages)*  

payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the note secured thereby not be eligible for insurance under the National Housing Act within _____ from the date hereof, Lender may, at its option and notwithstanding anything in Paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to _____ from the date hereof, declining to insure this Security Instrument and the note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

*(page 3 of 4 pages)*



**17. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**18. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**19. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**20. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**21. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider    ☐ Graduated Payment Rider    ☐ Growing Equity Rider

☒ Planned Unit Development Rider    ☒ Other [Specify]    ARM RIDER
WAIVER AND ATTY'S AFFIDAVIT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 4 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Unofficial Witness

_____
Notary Public, _____ County

_____ (Seal)
HIRAM COLON                    Borrower

_____ (Seal)
                               Borrower

_____ (Seal)
                               Borrower

_____ (Seal)
                               Borrower

BOOK **8235** PAGE **124**

*(page 4 of 4 pages)*

**17. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

**18. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**19. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**20. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**21. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☒ Other [Specify] | ARM RIDER WAIVER AND ATTY'S AFFIDAVIT |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 4 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Unofficial Witness

_____ (Seal)
HIRAM COLON                          Borrower

_____ (Seal)
                                     Borrower

_____ (Seal)
                                     Borrower

Notary Public, _____ County

_____ (Seal)
                                     Borrower

BOOK 8235 PAGE 124

(page 4 of 4 pages)

*Blackburn & Walther, P.C.*
*Suite 102*
*Duluth, Georgia 30136*

# FHA MULTISTATE ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this                    16TH                         day of
JUNE, 1994                 and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to

EMORY MORTGAGE CORP.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

699 WATSON REEF, STONE MOUNTAIN, GA   30087

(Property Address)

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT.  THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Date**
The interest rate may change on the first day of   OCTOBER, 1995          , and that day of each succeeding year.
"Change Date" means each date on which the interest rate could change.

**(B) The Index**
Beginning with the first Change Date, the interest rate will be based on an Index.  "Index" means the weekly average
yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal
Reserve Board.  "Current Index" means the most recent Index figure available 30 days before the Change Date.  If the Index
(as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary.  As used in
this Rider, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.  Lender will give
Borrower notice of the new Index.

**(C) Calculation of Interest Rate Changes**
Before each Change Date, Lender will calculate a new interest rate by adding a margin of     TWO AND 00/100S

percentage
points (   2.00     %) to the current Index and rounding the sum to the nearest one-eighth of one percentage point
(0.125%).  Subject to the limits stated in Paragraph (D) of this Rider, this rounded amount will be the new interest rate until
the next Change Date.

**(D) Limits on Interest Rate Changes**
The interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date.
The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate.

**(E) Calculation of Payment Change**
If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and
interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate
through substantially equal payments.  In making such calculation, Lender will use the unpaid principal balance which would
be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments
to principal.  The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**
Lender will give notice to Borrower of any change in the interest rate and monthly payment amount.  The notice must
be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice,
(ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the
Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and
(viii) any other information which may be required by law from time to time.

ITEM 6582 (9104)                                      *(page 1 of 2 pages)*

Great Lakes Business Forms, Inc.
To Order Call: 1-800-530-9393 □ FAX 616-791-1131

BOOK **8235** PAGE **125**

**(G)  Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs (C) and (D) of this Rider will become effective on the Change Date.  Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph (F) of this Rider.  Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice.  If the monthly payment amount calculated in accordance with Paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal.  Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ — (Seal)                _____ — (Seal)
HIRAM COLON                                    Borrower                                                          Borrower

_____ — (Seal)                _____ — (Seal)
                                                       Borrower                                                          Borrower

_____ — (Seal)                _____ — (Seal)
                                                       Borrower                                                          Borrower

BOOK **8235** PAGE **126**

*(page 2 of 2 pages)*

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with Paragraphs (C) and (D) of this Rider will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by Paragraph (F) of this Rider. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with Paragraph (E) of this Rider for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with Paragraph (E) of this Rider decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if the Note is otherwise assigned before the demand for return is made.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
HIRAM COLON              Borrower                              Borrower

_____ (Seal)     _____ (Seal)
                         Borrower                              Borrower

_____ (Seal)     _____ (Seal)
                         Borrower                              Borrower

BOOK 8235 PAGE 126

*(page 2 of 2 pages)*

Blackburn & Walther, P.C.
3625 Savannah Place
Suite 102
Duluth, Georgia 30136

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this __16TH__ day of _____ JUNE _____, 19 __94__,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security
Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to

EMORY MORTGAGE CORP.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

699 WATSON REEF, STONE MOUNTAIN, GA  30087

[Property Address]

The Property is a part of a planned unit development ("PUD") known as:

FOREST COVE AT WATER'S RIDGE

[Name of Planned Unit Development]

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further
covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as
trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy
insuring the property located in the PUD, including all improvements now existing or hereafter erected on the
mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts,
for the periods, and against the hazards Lender requires, including fire and other hazards included within the
term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the
yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under this
Paragraph 4 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the
required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice
of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of
a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to
common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be
paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity
legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and
governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them.  Any amounts
disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security
Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest
from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to
Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Hiram Colon_ _____ (SEAL)     _____ (SEAL)
HIRAM COLON                        Borrower                              Borrower

_____ (SEAL)     _____ (SEAL)
                        Borrower                              Borrower

Signed, sealed and delivered
in the presence of

_____

KELLEY D. JOHNSON
NOTARY
MY COMMISSION EXPIRES
JUNE 8 1998
PUBLIC
GWINNETT COUNTY, GEORGIA

Deed Book 11338 Pg 344
Filed and Recorded May-02-2000 03:14pm
2000-0047018
Real Estate Transfer Tax $0.00

699 Watson Reef
Stone mt, GA 30087

Jeanette Rozier
Clerk of Superior Court Dekalb Cty. Ga.

# QUITCLAIM DEED

A298-10
R298-04

**THIS QUITCLAIM DEED**, Executed this 24th day of April , 2000 (year),

by first party, Grantor, Vern J. Slocum

whose post office address is 699 Watson Reef, Stone Mountain, GA 30087
(See legal description)

to second party, Grantee, Willette K. Slocum

whose post office address is 699 Watson Reef, Stone Mountain, GA 30087
(See legal description)

**WITNESSETH**, That the said first party, for good consideration and for the sum of
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXDollars ($10.00XXXXX) paid by the said second
party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim
unto the said second party forever, all the right, title, interest and claim which the said first party
has in and to the following described parcel of land, and improvements and appurtenances there-
to in the County of Dekalb                    , State of Georgia                    to wit:

LEGAL DESCRIPTION
All that tract of land lying and being in Land Lot 192 of the 16th
District of Dekalb County, Georgia and being known as 699 Watson
Reef, Stone Mountain, GA, 30087. Lot 42, Block A, of the Forest Cove
at Water's Edge Subdivision, as recorded in Plat Book 86, Page 122, Dekalb
County, Georgia.

ZAHH (1)                                                                Rev. 4/99

If your state requires 8 ½" x 11" forms, cut off the bottom of this page at the dotted line.



**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

_____
Signature of Witness

Kathy Smith
Print name of Witness

_____
Signature of Witness

Gwinn Lawrence
Print name of Witness

_____
Signature of First Party

Vern J. Slocum
Print name of First Party

_____
Signature of First Party

_____
Print name of First Party

State of *Georgia*                              }
County of *DeKalb*
On *May 1, 2006*                    before me,
appeared *Vern J. Slocum*
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____
Signature of Notary

Affiant _____ Known _____ Produced ID
Type of ID _GADL_                          (Seal)

State of                                        }
County of
On                                    before me,
appeared
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____
Signature of Notary

Affiant _____ Known _____ Produced ID
Type of ID _____
                                        (Seal)

_____
Signature of Preparer

_____
Print Name of Preparer

_____
Address of Preparer

(2)

If your state requires 8 ½" x 11" forms, cut off the bottom of this page at the dotted line.

Deed Book **11338** Pg   **345**

Jeanette Rozier
Clerk of Superior Court Dekalb Cty. Ga.

Deed Book 10161 Pg 191
Filed and Recorded Sep-01-1998 11:22am
1998-0081410
Real Estate Transfer Tax $0.00

CLERK, SUPERIOR COURT
By: *Juanita Hampton*
Deputy Clerk

---

SPACE ABOVE LINE FOR RECORDER'S USE

Please record and return to:

V J Slocum
1699 WATSON REEF
STONE MT GA, 30087

STATE OF GEORGIA    )
                    ) ss:
COUNTY OF DeKalb    )

DEED UNDER POWER OF SALE

THIS INSTRUMENT made and executed as of this 1st day of September, 1998;

WITNESSETH That:

WHEREAS, on the 1st day of September, 1998, during the legal hours of sale WATER'S EDGE HOMEOWNER'S ASSOCIATION, INC. (the "Association"), as attorney-in-fact for HIRAN COLON, did expose for sale at public outcry, to the highest bidder for cash, before the courthouse door in DeKalb County, Georgia, the lands hereinafter described, at which sale VERN SLOCUM ("Grantee"), whose address is 699-WATSON REEF Stone MTN 30087 was the highest bidder at and for FOUR THOUSAND SIX HUNDRED & 00/100, $4,600.00 cash; and said property was then and there knocked off to Grantee under and by virtue of the power and authority granted to Water's Edge Homeowner's Association in that certain Declaration of Covenants, Restrictions and Easements for Water's Edge dated May 29, 19987, recorded in Deed Book 5897, Page 89 DeKalb County, Georgia Records, as amended

Deed Book 1 0 1 6 1 Pg   1 9 2

(the "Declaration"). Said sale was made after advertising the time, place and terms
thereof in *The Champion*, having general circulation in DeKalb County, Georgia, and
being the publication in which Sheriff's advertisements for said County are now published
once a week for four weeks prior to said sale, and said advertisement in all respects
complied with the requirements and the power of sale and authority contained in said
Declaration. Notice of said sale was given to Grantee as required by O.C.G.A. §44-19-
162.2. Said sale was made for the purpose of paying outstanding assessments together
with interest due thereon due to the Water's Edge Homeowner's Association, pursuant to
said Declaration, and the expenses of the sale all of which was mature and payable because
of default of the said HIRAN COLON of the payments of homeowner assessments as
required by the Declaration.

NOW, THEREFORE, the Association, acting under and by virtue of the
power of sale and authority contained in said Declaration for and in consideration of
Four tHousand Six Hundred °⁰/₁₀₀, $4600.00  paid for said lands by virtue
of the public sale aforesaid, and in consideration of the facts herein before recited, has
bargained, sold and conveyed, and does hereby bargain, sell and convey unto Grantee, its
successors and assigns the following described property:

ALL THAT TRACT OR PARCEL OF LAND lying and being in
Land Lot 192 of the 16th District of DeKalb County, Georgia, being
Lot 45B, of Water's Edge subdivision as shown on the subdivision plat
thereof recorded in Plat Book 86, Page 122, DeKalb
County, Georgia Records, said plat being incorporated herein and made a
part hereof by reference, being improved property known as 699 Watson
Reef, Stone Mountain, Georgia 30087 according to the present
system of numbering houses in DeKalb County, Georgia.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem
taxes (including taxes which are a lien, but not yet due and payable), any matters which
might be disclosed by an accurate survey and inspection of the property, any assessments,
liens, encumbrances, zoning ordinances, restrictions, covenants and matters of record.

TO HAVE AND TO HOLD the said described property unto Grantee, its
successors and assigns in fee simple. It is the purpose and intent of this instrument to
convey all of the right, title equity and interest of said Grantee, its legal representative,
heirs, assigns, and all persons whomsoever claiming under it and in and to said lands.

2

Deed Book 10161 Pg 193
Clerk of Superior Court
DeKalb County, Georgia

IN WITNESS WHEREOF, the Association has hereunto executed this Deed and affixed its seal and delivered this instrument as of the day and year first above written.

WATER'S EDGE HOMEOWNER'S ASSOCIATION
as Attorney-in-Fact for
HIRAN COLON

Signed, sealed and delivered
in the presence of:

WATER'S EDGE HOMEOWNER'S
ASSOCIATION, INC.

_____
Unofficial Witness

By: _____
Thomas D. Page, President

Notary Public [Affix seal and
note date of expiration of
commission]
GEORGIA

ASSIGNMENT

Blackburn & Walther, P.C.
3625 Savannah Place
Suite 102
Duluth, Georgia 30136

STATE OF GEORGIA
COUNTY OF **DEKALB**

FILED & RECORDED
DEKALB CO. GA.

SEP 12 1994

For Value Received from                Emory Mortgage Corp.

has this day transferred, sold, assigned, conveyed and set over to

**TRUSTCORP MORTGAGE COMPANY**

**100 EAST WAYNE STREET, SOUTH BEND, IN 46624**

as Assignee, its successors, representatives and assigns, all its rights,
title and interest in and to the attached Security Deed (or Deed to Secure
Debt) executed by **HIRAM COLON**

to                    Emory Mortgage Corp.

dated **JUNE 16, 1994**                , in the amount of $ **98,300.00**

and recorded in Book **8235**, Page **121** in    **DEKALB**

County, Georgia. The Assignor herein specifically transfers, sells, conveys
and assigns to above Assignee, its successors, representatives and assigns,
the aforesaid Security Deed, the property described therein and the
indebtedness secured thereby, together with all the powers, options,
privileges and immunities therein contained.

The Assignor herein has this day sold and assigned to the Assignee herein the
Note secured by this deed and this transfer is made to secure the Assignee,
its successors, representatives and assigns, in the payment of said Note.

In Witness Whereof, the Assignor has hereunto set its hand and corporate
seal this     **16th**     day of   **JUNE**                , 19 **94** .

Signed, sealed and delivered                BY:  EMORY MORTGAGE CORP.
in the presence of:

Notary Public
My Commission Expires:_____                [CORPORATE SEAL]

Notary Public, DeKalb County, Georgia.
My Commission Expires August 11, 199_

[NOTARY SEAL]

DEED BOOK **25133** Pg **558**

Filed and Recorded:
8/31/2015 11:24:25 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9289-016 PO BOX 1629,
EAGAN, MN 55121-4400

### CORRECTIVE ASSIGNMENT OF SECURITY DEED

DeKalb, Georgia
"COLON"

**PREPARED BY: WELLS FARGO BANK, N.A.**

Date of Assignment: August 20th, 2015
Assignor: TRUSTCORP MORTGAGE COMPANY at 100 N. MICHIGAN STREET, SOUTH BEND, IN 46601
Assignee: CHARLES F. CURRY COMPANY at 720 MAIN STREET, KANSAS CITY, MO 64105

Executed by: HIRAM COLON. To: EMORY MORTGAGE CORPORATION
Date of Security Deed: 06/16/1994 Recorded: 06/28/1994 in Book/Reel/Liber: 8235 Page/Folio: 121 In the County
of DeKalb, State of Georgia.

Property Address: 699 WATSON REEF, STONE MOUNTAIN, GA 30087

Legal: N/A
This Corrective Assignment is being recorded to amend that Assignment executed 11/29/1999 and recorded
01/27/2000 as Instrument No. 2000-0009510 at Book 11176 Page 706, as that assignment is missing the 2nd
witness.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $98,300.00 with interest, secured thereby, and the full benefit of all
the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

TRUSTCORP MORTGAGE COMPANY
On 08-25-15

By: _Elizabeth Hawkins_
Assistant Vice President

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS                                          WITNESS

_Kathleen H Valheim_                             _Kristine Sieczko_
Kathleen H Valheim

NOTARY WITNESS

DEED BOOK 25133 Pg 559
Clerk of Superior Court
DeKalb County, Georgia

CORRECTIVE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF ___Indiana___
COUNTY OF _St. Joseph_____

Subscribed and sworn to (or affirmed) before me on __08-25-15__, by
__Elizabeth Hawkins  Assistant Vice President_____ of TRUSTCORP
MORTGAGE COMPANY, proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.

WITNESS my hand and official seal,

_Kim M. Tagliaferri_
Notary Expires: 11/12/2016
ST. JOSEPH, IN

NOTARY PUBLIC
S E A L
(This area for notarial seal)
INDIANA

Deed Book 13179 Pg 180
Filed and Recorded Apr-19-2002 09:26am
2002-0061230

*Linda Carter*

Linda Carter
Clerk of Superior Court Dekalb Cty. Ga.

Loan No.
Pool No.
Other Co. Loan No.
THIS DOCUMENT WAS PREPARED BY
AND WHEN RECORDED MAIL TO:
HOMESIDE LENDING, INC.
7301 BAYMEADOWS WAY
JACKSONVILLE, FLORIDA 32256
ATTN: TANGERINE STELLACIE - MR-RA

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned,

**CHARLES F. CURRY COMPANY F/K/A CHARLES F. CURRY AND COMPANY**

whose address is 720 MAIN STREET KANSAS CITY, MISSOURI 64105                                    (Assignor)
By these presents does convey, grant, bargain, sell, assign, transfer and set over to:

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A DELAWARE CORPORATION, AS NOMINEE FOR
HOMESIDE LENDING, INC., ITS SUCCESSORS AND ASSIGNS**

whose address is P.O. BOX 2026 / 4318 MILLER RD. FLINT, MICHIGAN 48501-2026                  (Assignee)
the described Mortgage/Deed of Trust, together with the certain note(s) described therein with all interest, all liens and any rights due
or to become due thereon.

Said Mortgage/Deed of Trust is recorded in the State of GEORGIA, County of DE KALB

Official Records on: **06/28/1994**      Original Loan Amount:    **$98,300.00**          Mortgage Date:            **06/16/1994**
Original Mortgagor: **HIRAM COLON,**

Trustee:

Instr #:                        Doc #:                            Cert #:                    Book: **8235**          Page: **121**
Legal:
Section:                Lot:                    Block:
Property/Tax ID #                                                              Group #:  0          District #:   0
Address:  **699 WATSON REEF, STONE MOUNTAIN, GA 30087**
Date:    **02/05/2001**                                   CHARLES F. CURRY COMPANY F/K/A CHARLES F.
                                                          CURRY AND COMPANY

*Deborah Johnson*                                        *Janet E Koenig*
DEBORAH JOHNSON                                          JANET E. KOENIG, VICE PRESIDENT
*Jasna Gazic*                                            *Lolita Garcia*
JASNA GAZIC                                               LOLITA GARCIA, ASSISTANT SECRETARY

STATE of FLORIDA, COUNTY of DUVAL

The foregoing instrument was acknowledged before me this 5th day of February, 2001 by JANET E. KOENIG, VICE PRESIDENT
and LOLITA GARCIA, ASSISTANT SECRETARY of CHARLES F. CURRY COMPANY F/K/A CHARLES F. CURRY AND
COMPANY, 720 MAIN STREET, KANSAS CITY, MISSOURI 64105, A MISSOURI Corporation, on behalf of the corporation.
He/She is personally known to me and to take an oath.

*Gail D. Brooks*
GAIL D. BROOKS, Notary Public
State of FLORIDA at Large, My Commission Expires:

MIN:
03/14/2002 DEBORAH JOHNSON Batch # 57 SaleID: UFC021                                   MERS PHONE 1-888-679-6377

Deed Book 16596 Pg 318
Filed and Recorded Sep-15-2004 09:51am
2004-0181601
Linda Carter
Clerk of Superior Court
Dekalb County, Georgia

## ASSIGNMENT OF MORTGAGE

RE - ACCOUNT NUMBER                                    POOL NUMBER

KNOW ALL MEN BY THESE PRESENTS
    THAT THE UNDERSIGNED, A CORPORATION DULY ORGANIZED AND EXISTING
UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF MISSOURI, HAVING ITS
PRINCIPAL OFFICE IN THE CITY OF KANSAS CITY AND THE STATE OF MISSOURI
FOR VALUE RECEIVED, DOES HEREBY SELL, ASSIGN, TRANSFER AND SET OVER
UNTO       MORTGAGE ELCTRONIC REGISTRATION SYSTEMS, INC.
           P.O. BOX 2026 FLINT MI 48501-2026

CERTAIN INDENTURE OF MORTGAGE BEARING DATE THE 16TH DAY OF JUNE
1994, MADE AND EXECUTED BY Hiram Colon

TO THE UNDERSIGNED AND RECORDED IN THE OFFICE OF THE RECORDER FOR THE
COUNTY OF DeKalb                          , STATE OF GEORGIA
BOOK 8255 PG 121      , ON THE 28TH DAY OF JUNE        , 1994, TOGETHER
WITH THE INDEBTEDNESS SECURED THEREBY AND ALL RIGHT TO ENFORCE
PAYMENT OUT OF THE MORTGAGED PROPERTY OR OTHERWISE.
LAND DISTRICT 16 LOT 42 BLK A
FOREST COVE AT WATER'S EDGE SUB.      TAX KEY 16 192 02 025
Property Address: 689 Watson Reef, Stone Mountain GA 30087
    IN WITNESS WHEREOF, THE UNDERSIGNED CORPORATION HAS EXECUTED
THIS ASSIGNMENT BY ITS OFFICERS, THEREUNTO DULY AUTHORIZED AND HAS
AFFIXED ITS CORPORATE SEAL THIS 29TH DAY OF NOVEMBER , 1999 AT
KANSAS CITY, MISSOURI.

ATTEST                                    CHARLES F. CURRY COMPANY

_Maria Garner_                            _Cara Terrell_
Maria Garner                              Cara Terrell
ASSISTANT SECRETARY                       VICE PRESIDENT

STATE OF MISSOURI
COUNTY OF JACKSON           )SS

    ON THIS 29TH DAY OF NOVEMBER , 1999, BEFORE ME APPEARED
CARA TERRELL AND MARIA GARNER,KNOWN TO ME PERSONALLY,
WHO BEING DULY SWORN DID SAY THAT THEY ARE VICE PRESIDENT AND
ASSISTANT SECRETARY OF CHARLES F. CURRY COMPANY AND ACKNOWLEDGED
SAID INSTRUMENT WAS SIGNED AND SEALED IN BEHALF OF SAID
CORPORATION BY AUTHORITY OF ITS BOARD OF DIRECTORS AND THAT SAID
INSTRUMENT IS THE FREE ACT AND DEED OF SAID CORPORATION.

My Commission Expires July 5, 2001        CHERYLL L. FULTZ
                                          NOTARY PUBLIC
                                          A RESIDENT OF JACKSON COUNTY, MO
MY COMMISSION EXPIRES JULY 5, 2001

THIS INSTRUMENT WAS PREPARED BY CARA TERRELL, VICE PRESIDENT
CHARLES F. CURRY COMPANY  P.O. BOX 806622, KANSAS CITY,
MISSOURI 64180-6622

        RECORD AND RETURN TO :
    HANOVER CAPITAL PARTNERS LTD.
        POST OFFICE BOX 3980
        EDISON, NJ 08818-3980

2011167918    DEED BOOK 22688 Pg 216

Filed and Recorded:
10/21/2011 9:30:34 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Return to:
Shapiro & Swertfeger
2872 Woodcock Boulevard
Suite 100
Atlanta, GA 30341
01-4435 | KLM

**PLEASE CROSS REFERENCE TO**
DEED BOOK 8235 PAGE 121

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: DEFAULT ASSIGNMENT, WELLS FARGO BANK, N.A. MAC: X9999-018 PO BOX 1629, MINNEAPOLIS, MN  55440-9700

## CORPORATE ASSIGNMENT OF Security Deed

DeKalb, Georgia
SELLER'S SERVICING #:         "COLON"

MERS #:            SIS #: 1-888-679-6377

Prepared By: Eric Bredesen, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD., EAGAN, MN  55121
(651)605-3792

Date of Assignment: October 14th, 2011
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMESIDE
LENDING, INC., ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E VOORHEES ST STE
C., DANVILLE, IL  61834
Assignee: US BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO WACHOVIA
BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR GSMPS MORTGAGE LOAN TRUST 2004-4 at 4801
FREDERICA STREET, OWENSBORO, KY  42301

Executed By: HIRAM COLON, To: EMORY MORTGAGE CORP.
Date of Security Deed: 08/18/1994 Recorded:  06/28/1994  in Book/Reel/Liber: 8235 Page/Folio: 121  In the County
of DeKalb, State of Georgia.

Property Address: 689 WATSON REEF, STONE MOUNTAIN, GA  30087

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $98,300.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMESIDE LENDING, INC.,
ITS SUCCESSORS AND ASSIGNS
On  10/14/2011

By: _Brittany Meis_ , Assistant
Secretary

WITNESS

_Stephanie Tautges_

WITNESS

_Matthew F. Ryan_

DEED BOOK 22688 Pg 217
Patric DeBerry
Clerk of Superior Court
DeKalb County, Georgia

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

Angela Marie Williams

On __10/14/2011__ before me, _____, a Notary Public in and for Dakota in the
State of Minnesota, personally appeared ___Brittany Mels___, Assistant Secretary, personally known to
me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires: 1/31/2012

ANGELA MARIE WILLIAMS
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2012

(This area for notarial seal)

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | Case No. 17-71098-LRC |
| WILLETTE KIMBERLY SLOCUM DBA V3 HOLDINGS LLC, | Chapter 13 |
| Debtor. | |

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify under penalty of perjury that I am, and at all times hereinafter mentioned, was more than 18 years of age, and that on the January 8, 2018, I served a copy of **Notice of Hearing and Motion for Order Under § 362(c)(4)(A)(ii) Confirming no Automatic Stay is in Effect** which was filed in this bankruptcy matter on the January 8, 2018, in the manner indicated:

**The following parties have been served via e-mail**:

Melissa J. Davey
mail@13trusteeatlanta.com

**The following parties have been served via U.S. First Class Mail**:

Willette Kimberly Slocum
699 Watson Reef
Stone Mountain, GA 30087

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.**

Dated: January 8, 2018

Brian K. Jordan, Bar No.: 113008
Attorney for Movant
Aldridge Pite, LLP
Fifteen Piedmont Center
3575 Piedmont Road, N.E., Suite 500
Atlanta, GA 30305
Phone: (404) 994-7400
Fax: (888) 873-6147
Email: bjordan@aldridgepite.com